UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | Case No. 21-CR- 671 (BAH) |
| **v.** ) | |
| ) | |
| **JAMES LOLLIS** ) | |

**JAMES LOLLIS'S MEMORANDUM IN AID OF SENTENCING**

Mr. Lollis, through undersigned counsel, submits this memorandum in aid of his sentencing hearing scheduled to occur on February 17, 2021.  Mr. Lollis is very remorseful for his actions on January 6, 2021.  While he came to Washington D.C. to express his political views and to support then President Trump, he wishes that he had not gone to the Capitol grounds.  He did not intend to do so when he came to the District.  He was here to attend the rally, hear the speeches, and make his voice heard. He had no intention of engaging in, or in any way, encouraging violent behavior.  He came to the rally with one other person.  He did not engage in any violent or destructive behavior, although he recognized that his participation in the larger group and entrance into the Capitol was wrong.  He was only in the Capitol for approximately 5 minutes and did not venture past the lobby.  While he engaged with the police, it was to attempt to render assistance to an injured person.  He acknowledges asking a police officer if he was on their side, but it was not done in a particularly menacing way and he certainly meant no disrespect.

As he acknowledged candidly to law enforcement when asked, he brought a gun with him when he traveled to Virginia, but he did not bring it into the District of Columbia and never

1

had any intention to do so. He carries a lawful weapon with him for protection when he travels because of a prior incident when he was the victim of a crime. The decision to bring a gun with him to Virginia had nothing to do with the rally or his actions on January 6, 2021. He knew that guns were not allowed in the District and that is why he left in in the hotel in Virginia. He did not post on social media and did not encourage others to engage in violent behavior. He is very disappointed in himself for his actions and regrets having entered the Capitol.

To his credit, Mr. Lollis quickly indicated a desire to plead guilty and, when interviewed by law enforcement was honest about his behavior, even to the point of acknowledging having brought a weapon to Virginia, something law enforcement would not have known had he not told them. Similarly, when he pleaded guilty, he truthfully answered the Court's question about the sticker that he placed on the doorway as he entered the Capitol building. That provocative sticker was not something Mr. Lollis brought with him – it was handed to him by someone with a roll of such stickers as he approached the door. He saw others had put their stickers on the doorframe and he followed suit. This is visible on the CCTV footage. Mr. Lollis is ashamed for having done so as he believes the Capitol building should be honored. Nevertheless, he acknowledged what he did in a candid and forthright manner. Mr. Lollis also acknowledges asking a police officer if he was on their side, but this was not done in a particularly menacing way and he certainly meant no disrespect. However, he fully understands that in the context of everything else that was happening that day, the Officer may have experienced it that way.

Similarly, the government points to, and the Court can see on the video, Mr. Lollis looking agitated and shouting to the police officers just before they sprayed him with a chemical irritant outside the Capitol Building after his exit. This was two minutes after he let the Capitol. But, his agitation was because there was an injured man needing medical attention and he was

trying to get the officers to render assistance. Shortly after this occurred, the man was given assistance and Mr. Lollis left the Capitol grounds.

As the government has correctly noted, Mr. Lollis accompanied Mr. Gunby who videotaped events at the Capitol and broadcast from the Metro afterwards.  Mr. Lollis did not participate in that broadcast.  He was seated on the metro holding his neck and suffering from the blast of chemical irritants he was sprayed with.  There were other individuals in the immediate area where Mr. Gunby was broadcasting and it appears the man in the red hat is the one who made the statement about weapons referred to by the government.  That man was seated in front and to the side of Mr. Gunby and it appears when the voice is heard, that is both the direction the voice is coming from and the place where Mr. Gunby is looking at the time the statement is made.  Mr. Lollis was asked about this and advised he is as certain as he can be that he didn't say it because it was not consistent with his feelings at the time, does not sound like him, and perhaps most importantly, what he remembers is how badly his mouth, throat, eyes and neck hurt from the irritant.  All he wanted to do at that time was to quietly return to the hotel to attempt to shower off the irritant.  Mr. Lollis made, and makes, no excuses for having entered the Capitol building.  He stood ready then and stands ready now to accept the consequences for his behavior.

As this Court is well aware, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]."  18 U.S.C. §3553(a).  In this case, understanding the full gravity of what occurred on January 6, 2021, and Mr. Lollis' role in those events, Mr. Lollis requests that the Court impose a period of probation with the agreed upon restitution.

Mr. Lollis recognizes how serious the January 6 incident was and in no way attempts to minimize his involvement in it.  Nevertheless, his charge is a Class B misdemeanor for which

3

probation is typically an appropriate sentence. The sentencing guidelines do not apply to misdemeanor offenses. Indeed, many felony offenses fall within a range that allows for a probationary sentence.

Mr. Lollis was arrested on September 8, 2021 in South Carolina, where he resides. He quickly indicated a desire to plead guilty, and that was accomplished on November 22, 2021. He has been fully compliant with his release conditions since that time and cooperated fully both with law enforcement and with the Probation Office in preparing his presentence report.

Mr. Lollis has no criminal history. He is a divorced father who has custody of his two children. The circumstances of his family situation are detailed in the PSR and will not be repeated in this public filing in the interest of protecting the privacy of his underage children. His parents have been beside Mr. Lollis throughout the pendency of this case and have assisted him in explaining the potential consequences of his actions to his children. He is an active and loving father who provides both sole financial and primary emotional support for his children. He continues to have the support of family and friends, as evidenced by the numerous letters written on his behalf. (See Attached). He has disabled all of his social media accounts and is focused solely on his mental health (as noted in the Presentence Report) and his family. He is not a drug user or an abuser of any substances. While he is not working presently due to mental health issues, he hopes to be able to resume employment once this case is concluded.

Mr. Lollis acknowledges his actions were a terrible lapse in judgment and one he deeply regrets. Most importantly, given the chance to do it again, he certainly would not. He has not posted or in any way celebrated the actions of that day since it occurred, has not returned to D.C. and did not take part in any further disruptions. This incident and his arrest and the aftermath have caused him considerable anxiety, and he has done everything he can to cooperate with law

enforcement and to quickly resolve this matter. Mr. Lollis leads a very simple life spending most of his time caring for his children and dealing with his mental health situation.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation. Mr. Lollis's likelihood of recidivism is very low. He has expressed genuine remorse and contrition, has cooperated fully with law enforcement, he immediately indicated a desire to plead guilty and did so as soon as the government made the plea offer. His acceptance of responsibility was complete and without reservation. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved. Those who would not be deterred by these consequences are likely not capable of being deterred. A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.

The government concedes that Mr. Lollis committed no violent acts and destroyed no property. He did not destroy property, steal property, commit violent acts, or encourage others to do so. He engaged in no pre-planning or coordination activities. When he met with law enforcement after the event, he made no excuses for his behavior, was sincerely contrite, did not blame law enforcement for his predicament, and did not attempt to rationalize his actions.

Another factor to consider is that Mr. Lollis accepted full responsibility very early on. While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way as Mr. Lollis has done.  This has a deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes.  However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity.  In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case.  Counsel will not address each sentence imposed in these misdemeanors and does not take issue with the comprehensive chart provided by the government for that purpose.

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Mr. Lollis places his trust in this Court to do just that.

Respectfully submitted,

A.  J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
MICHELLE PETERSON
Chief Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004